MURRAY ROTHSTEIN, Appellant, v PROVIDENT LIFE AND CASU-
ALTY INSURANCE COMPANY, Respondent.

First Department, March 5, 1992

APPEARANCES OF COUNSEL

*J. Rachael Hamlet* of counsel *(David L. Katsky* with her on

the brief; *Esanu Katsky Korins & Siger*, attorneys), for appellant.

*John LoBosco* of counsel *(William E. Kelly* with him on the brief; *Lane & Mittendorf*, attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

In this action, plaintiff seeks to prevent defendant insurer from terminating group health insurance coverage which it issued in November 1985 (Policy 9915) to cover the employees of H. J. Stotter Inc. (Stotter). Specifically at issue is a clause in the policy which provides that coverage for an employee and his dependents ends when "active employment with the Policyholder ceases." Plaintiff was employed by Stotter when Policy 9915 became effective. Plaintiff's wife, who is covered as a dependent by the policy, was diagnosed as having Lou Gehrig's disease in 1980. Her condition has since worsened to the point that she requires constant medical attention the cost of which amounts to approximately $28,000 a month.

In 1988, Stotter was taken over in a leveraged buyout. About a year later, Stotter's primary creditor, Creditanstalt-Bankverein (the Bank), seized Stotter's assets in foreclosure and then bought the assets at public auction for a new company which it formed to run the business. This new corporate owner, Graduate Plastics Company, Inc. (Graduate), continued to operate the same business as Stotter with the same employees.

After the Stotter/Graduate transaction, Graduate continued to pay monthly premiums to defendant, since it assumed that the insurance coverage was still in effect. Soon thereafter, defendant realized that a change in corporate ownership had occurred (the record demonstrates that after the transaction it was unclear as to who was actually paying the premiums) and it thus returned the premiums it had collected after the date of the transaction and declared that coverage under Policy 9915 had terminated as a result of the Stotter/Graduate transaction since the employees were no longer active employees of the nominal policyholder—Stotter.

Thereafter, plaintiff instituted this action seeking specific performance of the instant insurance policy. The IAS court issued a preliminary injunction which enjoined defendant from terminating the policy. This court later denied defendant's motions seeking to vacate and/or modify the prelimi-

nary injunction. After a bench trial, the IAS court concluded that plaintiff's active employment with Stotter had ceased when he began working for Graduate, and thus the policy had terminated. Accordingly, the court dismissed the complaint, vacated the preliminary injunction and entered judgment in favor of defendant. We find, however, that the cancellation of the insurance policy was not permissible under the instant facts; the Stotter/Graduate transaction did not in our view provide a proper basis for the defendant's invocation of the policy's "termination of employment" clause.

In general, termination of employment clauses, which are common to most group insurance contracts, address situations such as an employee's resignation or discharge. While the clauses may also be applicable in situations where there has been a change in the corporate employer, each situation must be evaluated on its own particular facts. (See, 71 NY Jur 2d, Insurance, §§ 1963, 1964.) It is appropriate to note that the proper purpose of such clauses in circumstances such as those at bar, is not to protect insurers against the very risks they have agreed to undertake, but against those new and unanticipated risks which frequently accompany a change in corporate identity. Thus, if, as a result of the Stotter/Graduate transaction, there had been any material change in the nature of the subject corporation's business, or there had been some risk-enhancing change in the insured workforce of the corporation, we would not hesitate to permit termination of the policy upon the ground sought. Nothing of the kind, however, has occurred. The business and workforce of the subject corporation remain exactly as they were prior to the Stotter/Graduate transaction. Indeed, the change in corporate ownership which occurred as a result of the Stotter/Graduate transaction can have been of no practical significance to defendant. From defendant's viewpoint the transaction was of no more consequence than the leveraged buyout of Stotter which occurred in 1988. Plainly, the termination of employment clause could not have been invoked by reason of the 1988 leveraged buyout and we do not perceive any more persuasive predicate for invocation of the clause in the present circumstances. Indeed, the only difference between the two situations is that here there has been a nominal change in the policyholder. But it was not the essence of the defendant's undertaking to insure a corporate name, but rather a business and its employees (see, Matter of McCarthy v Alling Personnel Corp., 39 AD2d 782, revd on dissent 33 NY2d 953; and see, Matter of

*Lipshitz v Hotel Charles,* 226 App Div 839, *affd* 252 NY 518). As these have remained essentially unchanged, we believe that the mere change in corporate name does not amount to a "termination of employment" within the meaning of the policy and, accordingly, furnishes no ground for termination of the policy.

It is apparent that if the Bank, in 1990, had bought out Stotter in a leveraged buyout instead of through the foreclosure/asset-purchase transaction, defendant could not have taken advantage of the termination of employment clause to refuse to provide benefits to the employees and their dependents. Were we to rule in accordance with the defendant's wishes, we would say, in effect, that the continued availability of something as vital as health coverage to corporate employees and their dependents could be made to depend entirely upon the form of a transaction otherwise without consequence either to the insurer or the insured employees. Such an elevation of form over substance simply cannot be countenanced. In the end, what the defendant complains of so bitterly can have nothing to do with being required to continue to insure against the very risks it had freely assumed in exchange for considerable premiums, but with the fact that those risks have proven more onerous than anticipated. In this context, the use of a termination of employment clause to work a life-threatening forfeiture of health care benefits amounts to nothing more than a subterfuge. We believe it to be offensive to public policy and will not permit it.

Accordingly, the judgment of the Supreme Court, New York County (Francis Pecora, J.), entered on August 9, 1991, which, after a bench trial, dismissed the complaint and dissolved a preliminary injunction, should be reversed, on the law and the facts, and judgment granted in plaintiff's favor declaring that Policy 9915 has not been effectively canceled and that defendant must continue to provide benefits of said policy, with costs.

MURPHY, P. J., ROSENBERGER, ELLERIN and ASCH, JJ., concur.

Judgment of the Supreme Court, New York County, entered on August 9, 1991, is reversed, on the law and the facts, and judgment granted in plaintiff's favor declaring that Policy 9915 has not been effectively canceled and that defendant must continue to provide benefits of said policy with costs.